UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FARIS ABDUL-MATIYN,

                        Plaintiff,

                                                        9:06-CV-1503
vs.                                                     (GTS/DRH)

ALLEN, Correction Officer; ROWE, Correction
Officer; VALEZQUEZ, Correction Officer;
BENBOW, Correction Officer; JOHNSON,
Sullivan Correctional Facility Senior Parole
Officer; WALSH, Sullivan Correctional
Facility Superintendent; ELIZABETH FARNUM,
Doctor; DEBROIZE, Doctor; FORSHEE, Doctor;
PETE HANMER, CNYPC Primary Therapist;
TOM MURPHY; JEFF NOWICKI; SHARON
BARBOZA, Director CNYPC SOTP Program;
STEVE CAPOLO; and LINDA BECKER,

                        Defendants.
_____

APPEARANCES:                            OF COUNSEL:

FARIS ABDUL-MATIYN
  Plaintiff, *Pro Se*
P.O. Box 210130
Brooklyn, New York 11221

HON. ANDREW M. CUOMO                    CHRISTINA L. ROBERTS-RYBA, ESQ.
Attorney General for the State of New York
  Counsel for the State Defendants
The Capitol
Albany, New York 12224

HON. MICHAEL A. CARDOZO                 ELIZABETH A. WELLS, ESQ.
Corporation Counsel of the City of New York   Assistant Corporation Counsel
  Counsel for the City Defendants
100 Church Street
New York, New York 10007

HON. GLENN T. SUDDABY, United States District Judge

**<u>DECISION and ORDER</u>**

Currently before the Court in this *pro se* prisoner civil rights action, filed by Faris Abdul-Matiyn ("Plaintiff") against fifteen employees of the City of New York Department of Correction or the New York State Department of Correctional Services, are the following: (1) a motion for summary judgment filed by Defendants Allen, Benbow, Rowe and Valezquez (hereinafter, the "City Defendants") (Dkt. Nos. 102-106); (2) a motion for summary judgment filed by Defendants Johnson, Walsh, Farnum, Debroize, Forshee, Hanmer, Murphy, Nowicki, Barboza, Capolo, and Becker (hereinafter, the "State Defendants") (Dkt. No. 107); and (3) United States Magistrate Judge David R. Homer's Report-Recommendation recommending that the City Defendants' motion be granted in its entirety, and that the State Defendants' motion be granted in part and denied in part (Dkt. No. 121). Neither party has submitted an Objection to the Report-Recommendation, and the time in which to do so has expired. For the following reasons, the Report-Recommendation is accepted and adopted in part, and all the claims asserted in Plaintiff's Complaint are dismissed except for his First Amendment claim that Defendants Hanmer, Murphy, and Nowicki denied him the right to pray.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Complaint

Plaintiff filed his Complaint on December 15, 2006, having signed it on or before December 1, 2006. (Dkt. No. 1.) Generally, construed with the utmost of liberality, Plaintiff's Complaint asserts the following six claims against the above-captioned Defendants:

**(1)** all four **City Defendants** violated his rights under the **Eighth Amendment** by being **deliberately indifferent** to his serious medical needs during his incarceration at Rikers Island between approximately May 5, 2005, and September 16, 2005;

2

**(2)** certain of the **State Defendants** (presumably including **Johnson, Walsh, Murphy** and **Farnum**) violated his rights under the **Fourteenth Amendment** by regularly placing him in restraints and **involuntarily committing** him to the Central New York Psychiatric Center ("CNYPC") in April of 2006, following his release on parole from Sullivan Correctional Facility;

**(3)** certain of the **State Defendants** (presumably including **Becker, Hanmer, Murphy, Nowicki** and **Capolo**) violated his rights under the **First Amendment** by failing to provide him with halal **religious meals and prayer time** while he resided at CNYPC, between approximately April of 2006, and December 1, 2006;

**(4)** certain of the **State Defendants** (presumably including **Johnson** and **Murphy**) violated his rights under the **Fourth Amendment** by performing, or authorizing, an **unlawful strip search** on him between approximately April of 2006, and December 1, 2006 (specifically, one search immediately before he left Sullivan Correctional Facility, another such search immediately after he arrived at CNYPC, and other such searches "on a few occasions" at CNYPC and whenever he was transported to outside medical facilities during the referenced time period);

**(5)** certain unidentified **State Defendants** violated his rights under the **Fourteenth Amendment** by failing to provide him with **adequate living conditions** at CNYPC between approximately April of 2006, and December 1, 2006 (specifically, by not allowing him to clean his room for the first five months, and by allowing his bathroom to remain filthy and infested with bugs, despite Plaintiff's complaints); and

**(6)** certain of the **State Defendants** (presumably including **Johnson** and **Walsh**) violated his rights under the **Fourteenth Amendment** by **treating him differently** than other similarly

3

situated individuals, specifically, by civilly confining male sex offenders such as himself after parole but not doing so to female sex offenders.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

For a recitation of the factual allegations giving rise to these claims, the Court refers the reader to the Complaint in its entirety, and Magistrate Judge Homer's thorough Report-Recommendation.  (Dkt. Nos. 1, 121.)

**B.   Briefing on Parties' Motions**

For the sake of brevity, and because this Decision and Order is intended primarily for the review of the parties, the Court will not recite the legal arguments advanced by the parties during the rather extensive briefing that has occurred on the two motions currently pending before the Court.  The Court will simply note that the City Defendants were afforded the opportunity to file three memoranda of law, the State Defendants were afforded the opportunity to file two memoranda of law, and Plaintiff was afforded the opportunity to file five memoranda of law. (*See* Dkt. Nos. 104, 107, 110, 112, 113, 115, 116, 117, 118, 120.)

**C.   Magistrate Judge Homer's Report-Recommendation**

On March 4, 2010, Magistrate Judge Homer issued a Report-Recommendation recommending as follows: (1) that the City Defendants' motion for summary judgment (Dkt. No. 102) be granted, and judgment be entered for Allen, Rowe, Valezquez, and Benbow on all claims; (2) that the State Defendants' motion for summary judgment (Dkt. No. 107) be denied as to Plaintiff's First Amendment claim against Defendants Hanmer, Murphy and Nowicki based on the alleged denial of the right to pray; (3) that the State Defendants' motion for summary judgment (Dkt. No. 107) be denied as to Plaintiff's Fourth Amendment claim against Defendants Nowicki and Barbozza based on the alleged unlawful strip searches; and (4) that the State Defendants' motion for summary judgment (Dkt. No. 107) otherwise be granted, resulting in the

4

dismissal of all other claims against Defendants Hanmer, Murphy, Nowicki, and Barbozza, and

the dismissal of all claims against Defendants Johnson, Walsh, Farnum, Debroize, Forshee,

Capolo, and Becker.  (*See generally* Dkt. No. 121.)

Neither party has submitted an Objection to the Report-Recommendation.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard of Review Governing a Report-Recommendation

When specific objections are made to a magistrate judge's report-recommendation, the

Court makes a "de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made."  *See* 28 U.S.C. § 636(b)(1)(C).[1]

When only general objections are made to a magistrate judge's report-recommendation, the Court

reviews the report-recommendation for clear error or manifest injustice.  *See Brown v. Peters*,

95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases],

*aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).[2]  Similarly, when a party makes no

objection to a portion of a report-recommendation, the Court reviews that portion for clear error

---

[1]      On *de novo* review, "[t]he judge may . . . receive further evidence . . . ."  28
U.S.C. § 636(b)(1)(C).  However, a district court will ordinarily refuse to consider arguments,
case law and/or evidentiary material that could have been, but was not, presented to the
Magistrate Judge in the first instance.  *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132,
1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has
no right to present further testimony when it offers no justification for not offering the testimony
at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am.
World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court
did not abuse its discretion in denying plaintiff's request to present additional testimony where
plaintiff "offered no justification for not offering the testimony at the hearing before the
magistrate").

[2]      *See also Vargas v. Keane*, 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.
12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report . . . [did not] redress the
constitutional violations [experienced by petitioner] . . . is a general plea that the Report not be
adopted . . . [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."),
*aff'd*, 86 F.3d 1273 (2d Cir.), *cert. denied*, 519 U.S. 895 (1996).

or manifest injustice.  *See Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted].  After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

    **B.    Standard Governing a Motion for Summary Judgment**

    Magistrate Judge Homer correctly recited the legal standard governing a motion for summary judgment.  (Dkt. No. 121, at 13-14.)  As a result, this standard is incorporated by reference in this Decision and Order.

**III.    ANALYSIS**

    As an initial matter, neither party objected to Magistrate Judge Homer's thorough Report-Recommendation.  As a result, the Court reviews the entire Report-Recommendation for clear error.  After carefully reviewing all of the papers in this action, including Magistrate Judge Homer's thorough Report-Recommendation, the Court accepts and adopts Magistrate Judge Homer's Report-Recommendation except his recommendation that Plaintiff's strip-search claim should survive as supported by sufficient admissible record evidence.  The Court need not reach the merits of Magistrate Judge Homer's recommendation regarding the evidentiary sufficiency of that claim because the Court concludes, as a threshold matter, that the claim suffers from multiple fatal pleading deficiencies.

    The Court possesses the authority, and indeed the duty, to *sua sponte* dismiss for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), and such a dismissal may occur at any time.  *See Benitez v. Ham*, 04-CV-1159, 2009 WL 3486379, at *7 (N.D.N.Y. Oct. 21, 2009) (Mordue, C.J. adopting Lowe, M.J.) ("[E]ven where a defendant has not advanced

. . . a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a pro se prisoner has failed to state a claim upon which relief may be granted.").

Here, Plaintiff's Complaint alleges, in conclusory fashion, as follows: (1) "[s]ubsequent to plaintiff's encounter with P.O. Johnson[, where he was told that he was being transferred to Marcy Psychiatric C.F.,] plaintiff was taken to a room where he was told he had to undergo a strip search . . . [before he] was placed in a van and transported to . . . CNYPC";[3] (2) upon arriving at CNYPC, Plaintiff was "forced to undergo a strip search";[4] (3) "Plaintiff has been forcefully striped searched[] on a few occasions and threatened with the threat of being injected with drugs if he refused to be striped searched or if he refused to participate in the programs . . . at CNYPC";[5] and (4) "[w]hen plaintiff is transported to outside medical facilities or any other place outside [CNYPC] he is striped searched and placed in cuffs, shackles and leg irons."[6] Simply stated, Plaintiff's Complaint does not contain factual allegations plausibly suggesting the personal involvement of any Defendant in this action in any unconstitutional strip search conducted of Plaintiff between May 5, 2005 (when he was initially incarcerated at Rikers Island) and December 1, 2006 (the approximate date on which he signed his Complaint in this action).

Of course, the Court is mindful of the fact that, in his response papers, Plaintiff has alleged that, on January 10, 2007, he was also subjected to an unlawful strip-search. The Court is also mindful of the special solicitude that is generally to be afforded to the pleadings of *pro se*

---

[3]     (Dkt. No. 1, at 18.)

[4]     (Dkt. No. 1, at 19.)

[5]     (Dkt. No. 1, at 23.)

[6]     (Dkt. No. 1, at 23.)

civil rights litigants.  Finally, the Court is mindful that such special solicitude may sometimes be relied on to construe the factual allegations contained in a *pro se* civil rights litigant's papers in opposition to a motion to dismiss for failure to state a claim as effectively amending the allegations of his complaint (to the extent those factual allegations are consistent with the allegations of the complaint).[7]

For the sake of brevity, the Court will set aside the issue of whether the full measure of this special solicitude should be extended to Plaintiff–who was an extremely experienced *pro se* civil rights litigant before he drafted his 31-page typed Complaint in this action.[8]  The more important problem is that, here, Plaintiff has not responded to a *motion to dismiss for failure to state a claim* (which typically occurs relatively early in an action), but has responded to two *motions for summary judgment*.  As a result, Plaintiff's earliest response to Defendants' motions was filed three years after the signing of his Complaint (which occurred on or before December 1, 2006), and four months after the conclusion of discovery (which occurred on April 14, 2009).

Simply stated, permitting Plaintiff to drastically change the landscape of his claims at such a late stage of the action (by asserting a claim based on a strip search conducted more than a month *after* Plaintiff signed his Complaint in this action) would unduly prejudice Defendants, who spent the time and expense of filing two comprehensive and lengthy motions for summary judgment on the claims asserted in Plaintiff's Complaint, and who would not have the benefit of

---

[7]        *Cusamano v. Sobek*, 604 F. Supp.2d 416, 461-62 & n.79 (N.D.N.Y. 2009) (Lowe, M.J., adopted by Suddaby, J.) [citing cases].

[8]        The Court notes that, from the Federal Judiciary's Public Access to Electronic Court Records ("PACER") Service, it appears that Faris Abdul-Matiyn (a/k/a Faris Matin a/k/a Stephen Jackson), who was first incarcerated in the New York State Department of Correctional Services in 1978, filed some two dozen *pro se* prisoner civil rights actions in federal court before he filed his Complaint in this action in 2006.

conducting discovery on such new claims before trial.[9]   The Court notes that, during his

deposition in this action, Plaintiff never mentioned the strip search in question. (*See generally*

Dkt. No. 105, Part 1; Dkt. No. 107, Part 7; Dkt. No. 105, Part 1.)

Moreover, even if Plaintiff's response papers in this action could be deemed to amend

and/or supplement Plaintiff's Complaint, the arguments contained in those response papers

would not plausibly suggest a Fourth Amendment claim.  For example, Plaintiff's argument that

he was subject to "regular strip searches" is both vague and conclusory.[10]   Similarly, Plaintiff's

implicit argument that, contrary to Registered Nurse Kelly Appler's nursing note dated January

11, 2007, he did not *in fact* consent to being strip-searched on January 11, 2007, is legally

---

[9]       *See Cusamano*, 604 F. Supp.2d at 492 ("[W]hile special solicitude permits a *pro
se* plaintiff to effectively amend the allegations of his complaint while responding to a motion to
dismiss for failure to state a claim (which, typically, comes relatively early in an action), it does
not permit him to do so while responding to a motion for summary judgment (which, typically,
comes relatively late in an action, for example, where, as here, after the defendants have
completed discovery based on the allegations contained in the plaintiff's complaint)."); *Shaheen
v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *9 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J.,
adopting Report-Recommendation by Lowe, M.J., finding that a *pro se* civil rights plaintiff could
not effectively amend the allegations of his complaint through allegations raised for the first time
in his response to the defendants' summary judgment motion, since discovery had already been
completed); *accord*, *Jackson v. Onondaga County*, 549 F.Supp.2d 204, 220 & n. 45
(N.D.N.Y.2008) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.) (explaining
that "the net effect of permitting Plaintiff to so change the landscape of his claims at this late
stage of the action would be to deprive Defendants of the fair notice envisioned by Fed. R. Civ.
P. 8."); *cf. Shah v. Helen Hayes Hosp.,* 252 F. App'x 364, 366 (2d Cir. 2007) (holding that
plaintiff's claims raised for first time in response to summary judgment motion could not be used
as means to amend complaint); *Isaac v. City of New York,* 701 F. Supp.2d 477, 491 (S.D.N.Y.
2010) ("Plaintiff may not use his submission in opposition to summary judgment as a back door
means to amend the complaint."); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)
("Plaintiff's delay in asserting that he was injured until his response to defendant's argument
[during his motion for summary judgment] that verbal threats without injuries are not actionable
under § 1983 confirms the implausibility of plaintiff's new claim.") (Sotomayor, J.), *aff'd*, 205
F.3d 1324 (2d Cir. 2000).

[10]       (Dkt. No. 110, at 14, ¶ 25.)

insufficient to render the alleged strip-search actionable under the Fourth Amendment.[11]  This is because, in his response papers, Plaintiff acknowledges that the search occurred in response to a fire breaking out in the ward in which Plaintiff resided.

More specifically, according to his own response papers, Plaintiff's late-blossoming factual allegations regarding the search on January 11, 2007, are as follows: (1) a small fire broke out in a patient's bathroom on Ward 405 on the evening of January 10, 2007; (2) a management meeting was held between eight staff members, including Defendant Nowick; (3) at some point, Defendant Barboza was "apprised" of the meeting; (4) at this meeting, the decision was made to order strip searches on all patients due to the severity of the safety issue; (5) this explanation was then given to Plaintiff on January 11, 2007; and (6) Plaintiff was then strip searched in a private area by all male staff on January 11, 2007.  (*See generally* Dkt. No. 110, at 76-77 [attaching two Nurse Progress Notes regarding Plf., incorporated by reference into response]; Dkt. No. 110 at 14, ¶ 25 [attaching Plf.'s Affirm. in Response to State Defs.' Motion for Summ. Judg., incorporated by reference into response].)

Based on even these allegations, the Court would find no actionable Fourth Amendment claim asserted by Plaintiff in this action.  The Supreme Court has made clear that, "in the context of safety and administrative regulations, a search unsupported by probable cause may be reasonable when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Bd. of Educ. v. Earls*, 536 U.S. 822, 829 (2002). "[I]n certain limited circumstances, the Government's need to discover . . . latent or hidden conditions, or to prevent their development, is sufficiently compelling to justify the intrusion on

---

[11]     Specifically, Plaintiff argues that he did not thank staff for providing him with an explanation for the search, and he "could never feel better or good after being so degradingly violated where he had to expose his entire naked body to staff . . . ."  (Dkt. No. 110, at 14, ¶ 25.)

privacy entailed by conducting such searches without any measure of individualized suspicion."

*Earls*, 536 U.S. at 829.  "However, the 'special needs' standard does not validate searches

simply because a special need exists." *N.G. v. Conn.*, 382 F.3d 225, 231 (2d Cir. 2004).

"Instead, what is required is 'a fact-specific balancing of the intrusion . . . against the promotion

of legitimate governmental interests.'"  *N.G.*, 382 F.3d at 231 (quoting *Earls*, 536 U.S. at 830).

"This is simply an application of the overarching principle that '[t]he test of reasonableness

under the Fourth Amendment . . . requires a balancing of the need for the particular search

against the invasion of personal rights that the search entails.'"  *Id*. (quoting *Bell v. Wolfish*, 441

U.S. 520, 559 [1979]).[12]

According to Plaintiff's own allegations, the State Defendants possessed a reasonable

suspicion that a patient at the facility started the fire.  Moreover, the extreme safety issues

associated with an individual attempting to set a building on fire is sufficiently compelling to

justify the intrusion on privacy entailed by conducting the searches of the patients without any

measure of individualized suspicion.[13]  As a result, any such search did not violate Plaintiff's

---

[12]    In *N.G.*, the Second Circuit addressed, among other things, whether a strip search of one girl at a juvenile detention facility based on a missing pencil (on two separate occasions) was appropriate given that she was one of among ten to twenty girls in the room in which the pencil went missing.  *N.G.*, 382 F.3d at 234.  In reaching its conclusion that the complaint stated a claim of an unlawful strip search, the Court of Appeals noted that, "[a]lthough we recognize the possibilities that a pencil could be used as a weapon and could be concealed in a body-cavity, the combination of these possibilities alone is too unlikely to justify the serious intrusion of a strip search, in the absence of reasonable suspicion concerning possession of the missing item." *Id.*  The Court noted further that "[s]uch reasonable suspicion might arise if less intrusive searches such as pat-downs of the girls in the room where the pencil disappeared failed to locate it, raising suspicion that one of the girls in that room had the pencil concealed."  *Id.*  However, the Court of Appeals also noted that, "[s]ince the pencils were numbered, it would not have been difficult to keep track of which girls had which pencils, thereby pinpointing the girl who had not turned in the missing pencil."

[13]    Unlike in *N.G.*, which involved the *possibility* of contraband being used as a weapon, the facts in this case establish that contraband was used to start a fire prior to the search.

Fourth Amendment rights.[14]

Finally, even if the Court were to liberally construe Plaintiff's response papers as a formal motion to amend/supplement his Complaint, and even if the Court were to look past the fact that Plaintiff has failed to submit a proposed Amended/Supplemental Complaint specifying his proposed amendments, the Court would still reject Plaintiff's proposed claim.  This is because, when a motion to amend or supplement is made in response to a motion for summary judgment, the court assessing whether to deny the proposed amendment as futile should consider the evidence in the record and not assess the proposed amendment as if the evidence does not exist; in such a case, the proposed amended/supplemental pleading is futile if it could not survive the summary judgment motion.[15]  Here, the only admissible record evidence adduced in support of this claim establishes that Plaintiff manifested to correctional staff his consent to the strip search on January 11, 2007, entitling Defendants (at the very least) to qualified immunity.  (Dkt.

---

Moreover, unlike in *N.G.*, there was no way to pinpoint who started the fire in the bathroom such that less invasive measures could have been taken.

[14]      The Courts notes that it finds *Aiken v. Nixon*, 236 F. Supp. 2d 211 (N.D.N.Y. 2002) (McAvoy, J.), *aff'd*, 80 F. App'x 146 (2d Cir. 2003), distinguishable from this case because *Aiken* involved the repeated strip searching of a patient whenever he appeared for admission into the psychiatric center, based on the State psychiatric center program director placing a standing order in the patient's record for this to be done.

[15]      *See, e.g., Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (explaining that, when cross-motion to amend complaint is made in response to a motion for summary judgment, and parties have fully briefed issue whether proposed amended complaint could raise genuine issue of fact and have presented all relevant evidence in support of their positions, court may deny the amendment as futile, even if it states valid claim on its face, where evidence in support of proposed new claim creates no triable issue of fact and defendant would be entitled to summary judgment on it); *accord, Newburgh v. Adlabs Films USA, Inc.*, 09-CV-11067, 2010 WL 2772446, at *6 (E.D. Mich. July 13, 2010).

No. 110, at 76-77.)[16]  Furthermore, the admissible record evidence establishes that the only

personal involvement of any Defendant in this action in the search was (1) Defendant Nowicki's

participation in a "management meeting" between himself and seven other staff members

(including security supervisors) regarding whether to perform the searches of patients, and (2)

Defendant Barboza's being "apprised" of that meeting.  (*Id.* at 176.)

For each of these several alternative reasons, the Court rejects any Fourth Amendment

claim proposed by Plaintiff arising from the strip-search he allegedly experienced on January 11,

2007.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Homer's Report-Recommendation (Dkt. No. 121) is

**ACCEPTED** and **ADOPTED in part**; and it is further

**ORDERED** that the Defendants' motions for summary judgment (Dkt. Nos. 102, 107)

are **GRANTED in part and DENIED in part**; and it is further

---

[16]     More specifically, the record evidence establishes that, at 2:32 p.m. on January
11, 2007, Nurse Supervisor Tanya Marr completed a "Progress Note" regarding Plaintiff, which
states as follows: (1) on the evening of January 10, 2007, a small fire broke out in the patient's
bathroom on ward 405; (2) a management meeting was subsequently held, where the decision
was made to strip search all patients "due to [the] severity of this safety issue"; (3) "N. Nihalani
MD wrote order for [Plaintiff] to be strip searched, [and] the reason for the procedure was
explained to [Plaintiff]"; (4) Plaintiff "was moved to a private area and search was conducted by
male staff"; (5) "Dr. Nihalani spoke with [Plaintiff] and showed [him] the policy and procedure";
(6) "[Plaintiff] was cooperative with procedure"; (7) "[Plaintiff] was cooperative for ward room
search"; and (8) "[Plaintiff] voiced no concerns, complaints or questions during the search."
(Dkt. No. 110, at 76.)  Moreover, at 3:45 p.m. on January 11, 2007, Nurse Supervisor Kelly
Appler completed a "Progress Note" regarding Plaintiff, which states as follows: (1) this
Progress Note is an "[a]ddendum to [the] nursing note [prepared at 2:32 p.m.]"; (2) "[Plaintiff]
stated [to Dr. Nihalani that 'he] felt violated that [he] was searched'"; (3) "Dr. Nihalani and Jeff
Nowicki and [Kelly Appler] reassured [Plaintiff] it was done for safety and security reasons";
and (4) "[Plaintiff] stated[,] 'Thank you I feel better that you reassured me of the reason.'" (*Id.* at
77.)

**ORDERED** that all the claims asserted in Plaintiff's Complaint (Dkt. No. 1) are

**DISMISSED** from this action except for Plaintiff's First Amendment claim that Defendants

Hanmer, Murphy, and Nowicki denied him the right to pray; and it is further

**ORDERED** that the clerk shall terminate Defendants Allen, Rowe, Valezquez, Benbow,

Johnson, Walsh, Farnum, Debroize, Forshee, Barboza, Capolo and Becker from this action; and

it is further

**ORDERED** that the clerk of the Court shall appoint pro bono counsel for plaintiff for

purposes of trial, and as soon as pro bono counsel has been appointed, the Court will schedule a

pretrial conference to set a trial date in this action.

Dated: September 28, 2010
        Syracuse, New York


Hon. Glenn T. Suddaby
U.S. District Judge

14